USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 27, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                               :

ARTEC CONSTRUCTION AND
DEVELOPMENT CORP.,

                      Plaintiff,

                   v.                              15 Civ. 9494 (KPF)

NEW YORK CITY DEPARTMENT OF       OPINION AND ORDER
HOUSING PRESERVATION AND
DEVELOPMENT and NEW YORK CITY
DEPARTMENT OF INVESTIGATION,

                    Defendants.
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Artec Construction and Development Corp. sues Defendants New York City Department of Housing Preservation and Development ("HPD") and New York City Department of Investigation ("DOI"), pursuant to 42 U.S.C. § 1983, for Defendants' alleged violations of the Equal Protection Clause of the Fourteenth Amendment. Defendants move to dismiss the Amended Complaint (the "FAC") under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed plausibly to plead a constitutional violation or municipal liability for any such violation. For the reasons set forth in this Opinion, Defendants' motion to dismiss is denied without prejudice to refile in light of Plaintiff's proposed amendment to the FAC.

## BACKGROUND[1]

### A.     Factual Background

Plaintiff, a New Jersey corporation, is a general contractor that builds affordable housing in New York City.  (FAC ¶ 1).  Plaintiff accomplishes this through contracts that are negotiated with private developers but administered by HPD, an administrative agency of the City of New York (the "City").  (*Id.* at ¶¶ 1, 4).  DOI, another City administrative agency, is tasked in this context with investigating potential violations of certain wage laws (the "Prevailing Wage Laws") applicable to general- and sub-contractors on HPD-administered construction projects ("HPD-related projects").  (*Id.* at ¶¶ 1, 5).

Plaintiff was the general contractor on four HPD-related projects (the "Projects").  (FAC ¶ 8).  In or about May 2011, Plaintiff claims, a prominent trade union "commenced an aggressive public information campaign against [Plaintiff] alleging that [Plaintiff] and its subcontractors failed to pay the area standard wages to their employees and violated the Prevailing Wage Laws."  (*Id.* at ¶ 10).  The campaign communicated its message "to government officials, power players and others involved in the New York City affordable housing industry."  (*Id.* at ¶ 11).  It also targeted HPD, accusing the agency through various mediums of "failing to … withhold contract payments as required by the law, failing to closely monitor [Plaintiff] and its subcontractors to [e]nsure

---

[1]     This Opinion draws on facts from the Amended Complaint ("FAC," Dkt. #14), the well-pled facts of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  For convenience, Defendants' moving brief is referred to as "Def. Br." (Dkt. #24); Plaintiff's brief in opposition as "Pl. Opp." (Dkt. #25); and Defendants' reply brief as "Def. Reply" (Dkt. #29).

compliance with the Prevailing Wage Laws, and essentially falling down on the job." (*Id.* at ¶ 12). For example, the union took out a newspaper advertisement that labeled Plaintiff a "bad" contractor and bore headlines such as "HPD is Building a Web of Bad Contractors" and "HPD: Why Are You Perpetuating These Irresponsible Contractors?" (*Id.* at ¶ 13).

Plaintiff alleges that as a result of being implicated in Plaintiff's bad conduct, HPD "had an axe to grind with [Plaintiff]." (FAC ¶ 15). "Almost immediately after the [union] began its campaign, Doug Apple, the then-Deputy Commissioner of HPD, without asking any questions or providing any information, notified … [Plaintiff's] owner, that [Plaintiff] could not take on any further HPD-related projects." (*Id.*). Defendants also began investigating Plaintiff and its subcontractors on the Projects for Prevailing Wage Law violations. (*Id.* at ¶ 16).

In or about March 2013, DOI presented Plaintiff with Defendants' findings that Plaintiff and its subcontractors had committed substantial violations of the Prevailing Wage Laws and that Plaintiff, as the general contractor for the Projects, was liable for millions of dollars' worth of back wages (the "DOI Wage Figure"). (FAC ¶ 18). DOI never presented Plaintiff with specific allegations or evidence, and never commenced an administrative proceeding against Plaintiff. (*Id.* at ¶¶ 19-20). Instead, "Defendants simply withheld substantial sums of money due to [Plaintiff] in connection with its work on the Projects, placed [Plaintiff] on Enhanced Review status, and refused to allow [Plaintiff] to work on any further HPD-related projects." (*Id.* at ¶ 21).

3

Between 2011 and 2015, Plaintiff reached out to Defendants in order to obtain substantiation for the DOI Wage Figure and to explore ways that Plaintiff could resume working on HPD-related projects, but Defendants rebuffed Plaintiff's efforts. (FAC ¶¶ 22-23). HPD indicated that DOI approval was necessary before Plaintiff could work on future HPD-related projects. (*Id.* at ¶ 24). DOI, in turn, told Plaintiff that if it "ever wanted to perform work on City-related construction projects again," Plaintiff had to agree to:

> (i) pay the [DOI Wage Figures] in full with no questions asked,
>
> (ii) subject [Plaintiff's owner] to a "Queen for a Day" proffer session with DOI and the New York City District Attorney's Office and answer any and all questions posed by DOI regarding [Plaintiff's] business operations and knowledge of any alleged wrongdoing in the industry whether related or unrelated to [Plaintiff], and
>
> (iii) commit to an ongoing and indeterminate relationship of cooperation with DOI to assist DOI with any of its present and/or future investigations in the construction industry, including, but not limited to, the requirement that [Plaintiff's owner] become a DOI informant, wear a wire at DOI's command, attend meetings with DOI whenever DOI so demanded, and otherwise agree to be at DOI's beck and call.

(*Id.* at ¶ 25). Having refused to accede to all of these "bullying and extortionist" conditions, Plaintiff "is to this day barred from performing work on City-related construction projects." (*Id.* at ¶¶ 25-26).

B.   **Procedural Background**

Plaintiff filed this action in the Supreme Court of New York, New York County, on November 9, 2015, and Defendants removed it to this Court on December 4, 2015. (Dkt. #1). Following a January 15, 2016 pre-motion

conference, Plaintiff filed the FAC. (Dkt. #14, 16). On April 5 and 6, 2016, Defendants filed a motion to dismiss the FAC, a supporting brief, and various attachments. (Dkt. #22, 24). On May 6, 2016, Plaintiff filed an opposition brief and various attachments (Dkt. #25), including a Proposed Second Amended Complaint (Dkt. #25-1). On June 3, 2016, Defendants filed a reply brief. (Dkt. #29).

## DISCUSSION

### A. Defendants' Motion to Dismiss is Denied Without Prejudice and Plaintiff is Granted Leave to Amend

#### 1. Applicable Law

Plaintiff sues Defendants — two municipal agencies — pursuant to 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment. (FAC ¶¶ 1, 4-5). Plaintiff pursues both a "selective enforcement" theory and a "class of one" theory. (*Id.* at ¶¶ 58-68).

##### a. The Equal Protection Clause

The Equal Protection Clause requires state governments to treat all similarly situated people alike. *City of Cleburne* v. *Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Clause's protections "apply to administrative as well as legislative acts." *Engquist* v. *Oregon Dep't of Agr.*, 553 U.S. 591, 597 (2008). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs.*

v. *Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  Such non-class-based equal protection claims may be brought under either a "class of one" theory or a "selective enforcement" theory.  *See generally Bizzarro* v. *Miranda*, 394 F.3d 82, 86-89 (2d Cir. 2005).

Under either theory, a plaintiff must demonstrate that the defendant intentionally treated him differently from others similarly situated.  *See Bizzarro*, 394 F.3d at 86.[2]  Generally speaking, a "class of one" theory requires the plaintiff also to show that there was no rational basis for the different treatment, whereas a "selective enforcement" theory requires the plaintiff to show that the selective treatment was based on impermissible considerations, such as malicious or bad-faith intent to injure.  *See Vill. of Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000) (per curiam) (describing "class of one" standard); *LeClair* v. *Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (describing "selective enforcement" standard); *see also 33 Seminary LLC* v. *The City of Binghamton*, No. 15-2646, 2016 WL 6917227, at *2 (2d Cir. Nov. 23, 2016) (summary order) ("[A 'selective enforcement'] claim focuses on whether the alleged animus caused the disparate treatment, whereas a ['class of one'] claim looks to whether the official's conduct was rationally related to the

---

[2]  "Under either standard, a plaintiff must make *some* showing of different or unequal treatment."  *33 Seminary LLC* v. *The City of Binghamton*, No. 15-2646, 2016 WL 6917227, at *2 (2d Cir. Nov. 23, 2016) (summary order) (emphasis in original).  But the Second Circuit has not yet resolved whether "different standards govern the showing necessary to demonstrate unequal treatment under ['class of one'] and ['selective enforcement'] claims."  *Id.* at *2 n.2.

accomplishment of the work of their agency."); *see generally Bizzarro*, 394 F.3d at 86-89 (comparing both theories).

In *Engquist*, the Supreme Court eliminated "class of one" claims for government employees. *See* 553 U.S. at 603. The Court reasoned that some types of state action inherently "involve discretionary decisionmaking based on a vast array of subjective, individualized assessment," and do not violate the Equal Protection Clause "because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* The Second Circuit later clarified in *Analytical Diagnostic Labs, Inc.* v. *Kusel* that "[w]hile there may be some circumstances where *Engquist* is properly applied outside of the employment context," "*Engquist* does not bar all class-of-one claims involving discretionary state action." 626 F.3d 135, 142 (2d Cir. 2010). The Circuit also reaffirmed the "crucial difference … between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its internal operations." *Id.* (internal quotation marks omitted) (quoting *Engquist*, 553 U.S. at 598). "Class of one" claims in the latter context are more likely to fall within the *Engquist* bar. *See id.*

      **b.**    **Municipal Liability**

A municipality is generally responsible for constitutional-right violations stemming from the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell* v. *Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To hold a municipality liable under § 1983 for the unconstitutional actions of its

employees, "a plaintiff is required to plead and prove three elements: [i] an official policy or custom that [ii] causes the plaintiff to be subjected to [iii] a denial of a constitutional right." *Wray* v. *City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista* v. *Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

"[T]he single act of a municipal policymaker, *i.e.*, a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." *Santos* v. *New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Pembaur* v. *Cincinnati*, 475 U.S. 469, 480 (1986)). Authority to set municipal policy resides in "the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483 (citation omitted). "[W]hether an official had final policymaking authority is a question of state law." *Id.*; *see also Fierro* v. *N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 588 (S.D.N.Y. 2014).

Moreover, under the New York City Charter, Defendants HPD and DOI are non-suable City agencies, and any claims against them must be brought instead against the City. *See* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Garanin* v. *N.Y.C. Hous. Pres. & Dev.*, No. 15 Civ. 3169 (AJN), 2016 WL 1690301, at *5 (S.D.N.Y. Mar. 30, 2016) (dismissing § 1983 claim against HPD as a non-suable entity); *Siino* v. *Dep't of Educ. of City of N.Y.*, 843 N.Y.S.2d 828, 829 (1st Dep't 2007) (describing DOI as an improper party pursuant to the City charter); *see also Nnebe* v. *Daus*, 644

F.3d 147, 158 (2d Cir. 2011) (noting "that, as a general matter, agencies of New York City are not suable entities in § 1983 actions").

### 2. Allegations in the FAC

Plaintiff's two claims are based on the same alleged differential treatment: Defendants permitted similarly situated general contractors, which were also on Enhanced Review status as a result of Prevailing Wage Law violations or investigations, to redress violations quickly and to continue working on HPD-related projects. (FAC ¶¶ 27-28, 36-37). By contrast, Defendants delayed their investigation of Plaintiff for years and continue to this day to "refuse[] to allow [Plaintiff] to serve as [a] general contractor" on HPD-related projects. (*Id.*). The FAC identifies six comparator general contractors and the HPD-related projects in which each was permitted to participate after placement on Enhanced Review status. (*Id.* at ¶¶ 29-34). In some instances, the comparator general contractors even worked with the same "problematic" subcontractors as Plaintiff. (*Id.* at ¶¶ 31, 34).

The FAC alleges that Defendants intentionally treated Plaintiff differently without a rational basis and, indeed, with malicious or bad-faith intent to injure Plaintiff (FAC ¶¶ 54-55), and that Plaintiff was in fact injured: Plaintiff had entered into agreements with private developers to serve as a general contractor on seven construction projects worth approximately $171 million. (*Id.* at ¶¶ 37-39 (specifying projects and contract prices)). Defendants' *de facto* debarment denied Plaintiff the opportunity to work on these projects and made waste of the significant time and resources that Plaintiff had spent leading up

9

to the closings of these projects. (*Id.* at ¶ 39; *see also id.* at ¶¶ 40-53 (detailing the efforts exerted and opportunity lost on each of the seven projects)).

### 3. The Parties' Arguments on the Instant Motion to Dismiss

Defendants' principal arguments in support of their motion to dismiss can be boiled down to four.[3] *First*, HPD and DOI are non-suable mayoral agencies and, in any case, the FAC fails plausibly to plead a *Monell* violation to hold the City itself liable. (Def. Br. 17-18). *Second*, as to both Equal Protection theories, Plaintiff fails to demonstrate that it was sufficiently similarly situated to its comparators. (*Id.* at 8-10). In this regard, Defendants argue that judicial notice should be taken of Plaintiff's guilty plea to falsifying business records; this criminal record makes Plaintiff materially dissimilar to its comparators. (*Id.*). *Third*, as to the "class of one" theory, Plaintiff's claim is barred by *Engquist* and *Analytical Diagnostic Labs* because HPD acted as a proprietor with virtually unfettered discretion in denying Plaintiff future contracts. (*Id.* at 14-16). Even if Plaintiff's claim is not barred *per se*, Defendants contend, Plaintiff's criminal conviction was a rational basis for Defendants' differential treatment. (*Id.* at 16-17). *Fourth*, as to the "selective enforcement" theory, Plaintiff fails plausibly to plead that Defendants acted with malice or bad faith;

---

[3]   Defendants urge judicial notice of certain filings in related criminal and civil matters, including notice of the content of these filings. (*See* Def. Br. 3-5, 8, 12-13; Def. Reply 9-15; *see also* Dkt. 24, Ex. B-I, K). Plaintiff generally opposes judicial notice of the *content* of these filings. (Pl. Opp. 3-4). The parties also debate whether claims based on certain of the Projects are barred under § 1983's three-year statute of limitations. (Def. Br. 19-20; Pl. Opp. 24-28). *See Pearl* v. *City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (discussing statute of limitations).

10

indeed, Plaintiff's own pleadings in this and other related matters render Plaintiff's allegations of animus implausible. (*Id.* at 10-13).

Plaintiff's opposition arguments are as follows. On the *Monell* issue, Plaintiff has adequately pled municipal liability based on the conduct of HPD Deputy Commissioner Apple, a municipal policymaker in Plaintiff's view; Plaintiff does not deny that HPD and DOI are non-suable agencies. (Pl. Opp. 22-23). In addition, Plaintiff's criminal plea and conviction do not render it dissimilar to the comparators for purposes of the instant claims because Defendants' differential treatment preceded Plaintiff's actual plea and conviction. (*Id.* at 8-9). For similar reasons, the criminal record could not have served as a rational basis for Defendants' conduct, the analysis of which is typically fact-intensive in any case. (*Id.* at 11-13). Moreover, under *Analytical Diagnostic Labs*, the *Engquist* bar does not apply here because Defendants acted more as a regulator than a proprietor when ensuring labor-law compliance and approving general contractors for participation in HPD-related projects. (*Id.* at 14-17). Finally, the genesis of Defendants' differential treatment — the union's embarrassing public-relations campaign — coupled with Defendants' "bullying and extortionist" cooperation demands and *de facto* debarment, evidence Defendants' malicious intent to injure Plaintiff. (*Id.* at 18-19). And contrary to Defendants' position, Plaintiff's pleadings in other cases do not offer a non-discriminatory explanation for Defendants' conduct. At best, they demonstrate that Defendants had a good-faith belief that Plaintiff violated the Prevailing Wage Laws, a trait shared by the comparators; the pleadings do

11

not explain why, unlike its comparators, Plaintiff has remained "effectively debarred." (*Id.* at 19-22).

### 4. Plaintiff Is Granted Leave to Amend

In its opposition brief, Plaintiff also seeks leave to amend the FAC, and attaches a proposed Second Amended Complaint (the "PSAC"). (Pl. Opp. 22-24; Dkt. #25-1). The Court notes that Plaintiff has already amended the complaint once following the January 15, 2016 Pre-Motion Conference. (Dkt. #14, 16). Plaintiff may amend its pleading again with the Court's leave, which the Court "should freely give ... when justice so requires." Fed. R. Civ. 15(a)(2). Because the Court has not yet issued a scheduling order, leave to amend is not held to the higher "good cause" standard set forth in Rule 16(b). *See Fullwood* v. *Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174 (KPF), 2014 WL 6076733, at *2 (S.D.N.Y. Nov. 14, 2014).

Plaintiff argues that it should be granted leave under Rule 15(a)'s liberal standard because amendment would serve the interests of justice, would not be futile, and would not prejudice Defendants because discovery has not yet started. (Pl. Opp. 23-24). The Supreme Court has made clear that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

12

*Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). The Second Circuit has suggested that prompt repleading upon receipt of a motion to dismiss may be particularly deserving of a district court's leave to amend. *See Williams* v. *Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011).

The Court finds that amendment would not be in bad faith or unduly prejudicial. The Court has not yet set a discovery schedule, the PSAC is Plaintiff's first proposed amended pleading after having reviewed Defendants' motion-to-dismiss briefing, and Plaintiff proactively attaches the PSAC to its opposition brief. The Court recognizes that Defendants have expended resources in preparing their motion papers; however, the Court does not believe that this expenditure, on its own, warrants denial of leave to amend.

The Court also finds that amendment would not be futile. The PSAC amends the FAC in key ways. Changes include (i) the substitution of the City for HPD and DOI (PSAC ¶ 4); (ii) the addition of *Monell*-related details concerning individuals who Plaintiff alleges possessed final decision-making authority with respect to Defendants' conduct (*id.* at ¶¶ 14-35); and (iii) the apparent addition of an additional basis of differential treatment beyond Defendants' *de facto* debarment, namely, that unlike its comparators, Plaintiff was subjected to a criminal investigation (*id.* at ¶¶ 35, 37-44). To no fault of their own, Defendants spend only a few pages in their reply brief challenging the adequacy of the PSAC. (*See, e.g.,* Def. Reply 8, 12).

The Court does not prejudge the merits of the PSAC, but finds that amendment would not be futile. The substitution of the City for HPD and DOI

resolves a threshold issue.  The additional details concerning individuals at HPD and DOI who allegedly had policymaking authority, and whose decisions may potentially constitute official policy, strengthens Plaintiff's *Monell* argument.  The PSAC maintains the FAC's considerable amount of factual material concerning Plaintiff's Equal Protection claims, including details regarding Plaintiff's comparators and lost projects, and Plaintiff's opposition brief sets forth at least colorable arguments that those claims cannot be dismissed on the pleadings.  Moreover, Plaintiff's additional basis for differential treatment has analytical consequences across both claims, making resolution on the basis of Defendant's reply brief unfair to both parties.

"This Court is not prepared to decide that Plaintiff's new allegations fail without the benefit of briefing in their defense, and suspects that 'Defendants, given their very limited opportunity to respond to these new allegations, would likely object if the Court decided that the new claims salvaged [Plaintiff's] allegations.'" *Fullwood*, 2014 WL 6076733, at *8 (quoting *Am. Stevedoring, Inc. v. Int'l Longshoreman's Ass'n*, No. 13 Civ. 0918 (KPF), 2014 WL 3582758, at *3 (S.D.N.Y. July 18, 2014)).  Accordingly, the Court will grant Defendants a full opportunity to challenge the allegations in the PSAC, and Plaintiff an opportunity to defend them, before judging their adequacy under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED without prejudice to refile. Plaintiff is granted leave to file the PSAC contained in Exhibit 1 of its opposition brief (*see* Dkt. #25-1). The Clerk of Court is directed to terminate the motion at docket entry 22.

The parties are hereby ORDERED to appear for a conference on **March 22, 2017, at 11:00 a.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, to discuss an expedited briefing schedule in the event that Defendants wish to refile their motion to dismiss. Any deadlines to answer specified under Federal Rules of Civil Procedure 12 and 15 are stayed pending further order of the Court.

SO ORDERED.

Dated:   February 27, 2017
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge